**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


MONTE EMMANUEL STRAITE,     )
                                )
        Petitioner,     )
                                )
        v.              )       1:11CR321-1
                                )       1:15CV910
UNITED STATES OF AMERICA,    )
                                )
        Respondent.     )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for recommended rulings on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 78),[1] Motion to File a Supplemental Pleading ("Supplement Motion") (Docket Entry 88), Supplemental Pleading to Petitioner's Section 2255 Motion ("Supplemental Section 2255 Motion") (Docket Entry 89), Motion Seeking Leave to Amend Pending 28 U.S.C. 2255 ("Amendment Motion") (Docket Entry 108), and Motion to Request Amended IAC Claim Be Accepted and Adjudicated as Uncontested ("Local Rule 7.3(k) Motion") (Docket Entry 109). Because the claims in the Section 2255 Motion (as supplemented as of right by the Supplemental Section 2255 Motion) lack merit and neither the claim proposed in the Amendment Motion nor Petitioner's invocation of Local Rule

---

[1] Parenthetical citations refer to Petitioner's criminal case.

7.3(k) entitle him to relief, the Court (A) should deny the Section 2255 Motion, the Supplemental Section 2255 Motion, and the Local Rule 7.3(k) Motion, (B) should deny as moot the First Supplement Motion, and (C) should deny as futile the Amendment Motion.

<u>INTRODUCTION</u>

The Court (per Senior United States District Judge N. Carlton Tilley, Jr.) previously entered a Judgment against Petitioner (based on a jury's guilty verdicts), imposing consecutive prison terms of (A) 135 months on Counts Two and Five (for an armed bank robbery committed on April 23, 2009, and an attempted armed robbery of the same bank committed on July 6, 2009, respectively, both in violation of 18 U.S.C. § 2113(d)), (B) 84 months on Count Three (for carrying and using, by brandishing, a firearm, during and in relation to a crime of violence committed on April 23, 2009, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Section 924(c)")), and (C) 300 months on Count Six (for carrying and using, by brandishing, a firearm, during and in relation to a crime of violence committed on July 6, 2009, in violation of Section 924(c)). (Docket Entry 52 at 1-2; <u>see also</u> Docket Entry 1 (Indictment); Docket Entry 40 (Verdict Form).)[2] Petitioner

_____

[2] The jury also found Petitioner guilty of Counts One and Four, which charged him with bank robbery and attempted bank robbery, in violation of 18 U.S.C. § 2113(a), for the same robbery and attempted robbery that resulted in his convictions for armed bank robbery and attempted armed bank robbery (as charged in Counts
(continued...)

2

appealed (Docket Entry 53), but the United States Court of Appeals for the Fourth Circuit affirmed and the United States Supreme Court refused review, see United States v. Straite, 576 F. App'x 211 (4th Cir.), cert. denied, 574 U.S. 986 (2014). He thereafter timely filed the Section 2255 Motion (along with a Memorandum of Law in Support (Docket Entry 79)), raising these five claims:

1) "[t]h[is C]ourt committed reversible error when it allowed testimony and exhibits related to [Petitioner's] phone records to be heard by [the] jury" (Docket Entry 78, ¶ 12(Ground One); see also id., ¶ 12(Ground One)(a) (asserting that Petitioner's "mobile phone records . . . were unlawfully obtained . . . without [his] consent, or a lawfully obtained search warrant" and that the "seizure of this evidence violated [his] 4th Amendment right"); Docket Entry 79 at 2 (stating, as to Ground One, that witnesses testified "[Petitioner's] mobile phone was within the immediate area of the bank, at the exact time of both robberies"));

2) "[c]ounsel['s ] failure to file a motion to suppress phone records unconstitutionally obtained amounts to ineffective assistance of counsel" (Docket Entry 78, ¶ 12(Ground Two); see also id., ¶ 12(Ground Two)(a) ("Upon discovery of the Government's intent to . . . use [Petitioner's] telephone records . . . to

---

[2](...continued)
Two and Five) (see Docket Entries 1, 40); the Judgment, however, imposes no sentence as to Counts One and Four, because "Counts 1 and 2 merge, and Counts 4 and 5 merge" (Docket Entry 52 at 2).

3

implicate his 'exact' location during the time-period of the robberies, [his] counsel [] had a legal obligation to make a timely request for the suppression or exclusion of this evidence, which was obtained without a proper search warrant."));

3) "[c]ounsel['s ] failure to call [Petitioner's] 'alibi witness[,' his] mother, amounted to ineffective assistance of counsel" (id., ¶ 12(Ground Three); see also id., ¶ 12(Ground Three)(a) (asserting that Petitioner's mother "would [have] testif[ied] that [P]etitioner[] was at home, with her, the entire day of the alleged robbery of July 6, 2009"));

4) "[c]ounsel['s ] advice to [Petitioner] 'not to testify' was unreasonable and prejudicial amounting to ineffective assistance of counsel" (id., ¶ 12(Ground Four); see also id., ¶ 12(Ground Four)(a) (asserting that Petitioner "w[as] ready to testify that [he was] at home the entire day of July 6, 2009," and that, "[a]fter refusing to call [Petitioner's] mother to testify, [Petitioner's] counsel [] should have reasonably called [Petitioner] to testify, as to his alibi")); and

5) "[c]ounsel['s ] failure to raise the appellate issue of the admission of unlawfully seized cell-phone records was ineffective assistance" (id., ¶ 12(Ground Five); see also id., ¶ 12(Ground Five)(a) ("On appeal, [Petitioner's] counsel [] should have foreseen the serious Fourth Amendment implications, and contested

4

th[is C]ourt's decision not [sic] to allow this evidence before the jury . . . .")).

Prior to any response by the United States to the Section 2255 Motion, Petitioner filed the Supplement Motion, "seek[ing] to raise an additional ground for relief, pursuant to and based upon [Johnson v. United States, 576 U.S. 591 (2015) (ruling residual clause of 'violent felony' definition in 18 U.S.C. § 924(e) void for vagueness)], which w[as] not available to him at the time he filed his [Section 2255 M]otion" (Docket Entry 88 at 2), along with the Supplemental Section 2255 Motion, which asserts that "Johnson's reasoning applies equally to the residual clause in 18 U.S.C. § 924(c)(3)(B) [(defining 'crime of violence')]" (Docket Entry 89 at 1 (space added)) and that, "[t]herefore, in light of Johnson, [his] manditory [sic] consecutive sentences under [Section ]924(c) were imposed in violation of the Constitution or laws of the United States, and exceeded the maximum authorized by law" (id.).

The United States thereafter responded in opposition to both the Section 2255 Motion and the Supplemental Section 2255 Motion (see Docket Entry 86 ("Response"); Docket Entry 96 ("Supplemental Response")), and Petitioner replied (to both) (see Docket Entry 94 ("Reply"); Docket Entry 104 ("Supplemental Reply")).[3] Years later,

---

[3] "[P]ursuant to the General Order Governing Claims Related to Johnson . . ., the Office of the Federal Public Defender [wa]s appointed to represent [Petitioner]" (Text Order dated July 27, (continued...)

5

Petitioner filed the Amendment Motion, arguing that the Court should allow him to add claims that his "conviction under [Section] 2113(a) and (d), in separate counts for the same offense, violated the Double Jeopardy Clause" (Docket Entry 108 at 3) and that "[his] counsel's failure to challenge this matter violated his Six[th] Amendment guarantee of effective assistance" (id.). Finally, Petitioner filed the Local Rule 7.3(k) Motion, which maintains that the United States failed to timely "respon[d] in opposition [to the Amendment Motion and therefore that], pursuant to Local Rule 7.3(k), . . . his [proposed] amended claim[s should] be considered and decided as uncontested." (Docket Entry 109 at 1-2.)

---

[3](...continued)
2016 (underscoring added)), but subsequently gave notice that it would not make any filings in aid of his Johnson claim, after "thoroughly review[ing] all portions of the record relating to the issues potentially arising out of Johnson . . ., including [] Petitioner's motions[ and] supplemental filings and the government's responses" (Docket Entry 103 at 1) and "[a]fter researching the applicable statutory and case law" (id.). Petitioner also filed another motion purportedly seeking to supplement his Section 2255 Motion pursuant to Federal Rule of Civil Procedure 15(d) (Docket Entry 107), but the Court (per the undersigned Magistrate Judge) terminated that motion as moot, because it did "not actually propose a supplemental claim for collateral relief and instead simply 'contend[ed] that the claim under Johnson raised in [the] Supplemental Section 2255 Motion is supported by Sessions v. Dimaya, 584 U.S. ___, 138 S. Ct. 1204 (2018), in which the Supreme Court declared that the residual clause of the definition of "crime of violence" in 18 U.S.C. § 16(b) is unconstitutionally vague,' which contention the Court . . . will consider without supplementation via Federal Rule of Civil Procedure 15(d)" (Text Order dated Mar. 24, 2022 (internal brackets, ellipsis, and full Johnson case name/citation omitted) (underscoring added) (quoting Docket Entry 107 at 2); see also Text Order dated Nov. 15, 2016 (staying case pending ruling in Dimaya)).

## GROUNDS ONE, TWO, AND FIVE

As quoted in the Introduction, Grounds One, Two, and Five of the Section 2255 Motion all revolve around Petitioner's objection that evidence at trial included records acquired without a warrant, which revealed the presence of his mobile telephone at the scene (and at the time) of the bank robbery and attempted bank robbery charged in the Indictment. Specifically, Ground One alleges that "[t]h[is C]ourt committed reversible error when it allowed testimony and exhibits related to [Petitioner's] phone records to be heard by [the] jury" (Docket Entry 78, ¶ 12(Ground One), because they "were unlawfully obtained . . . without [his] consent, or a lawfully obtained search warrant" (id., ¶ 12(Ground One)(a)), while Grounds Two and Five allege that his counsel lent ineffective assistance by "fail[ing] to file a motion to suppress [those] phone records [as] unconstitutionally obtained" (id., ¶ 12(Ground Two)) and by "fail[ing] to raise [an] appellate issue of the admission of [those] unlawfully seized cell-phone records" (id., ¶ 12(Ground Five)). The United States properly interposed a defense of "procedural default" (Docket Entry 86 at 15 (internal quotation marks omitted)), to Ground One's collateral claim of "reversible error" on this front (Docket Entry 78, ¶ 12(Ground One)), because – as Grounds Two and Five concede (see id., ¶ 12(Ground Two) & (Ground Five)) – Petitioner "did not raise [any] issues . . . regarding the constitutionality of the admission of evidence of his

7

cell phone records before th[is ] Court" (Docket Entry 86 at 14) and "failed to raise th[ose] issues on appeal" (id. at 15).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted).[4] "In some circumstances, a defendant may establish cause if he was represented by counsel whose performance was constitutionally ineffective under the standards established in Strickland v. Washington, 466 U.S. 668 (1984)." Fowler v. Joyner, 753 F.3d 446, 460 (4th Cir. 2014) (internal parallel citations omitted). Ground One thus merges with Grounds Two and Five. See, e.g., United States v. Yagman, Nos. CR06-227, CV10-9033, 2014 WL 12595336, at *9 n.9 (C.D. Cal. Aug. 14, 2014) (unpublished) ("[T]he cause and prejudice analysis collapses into the ineffectiveness analysis, and there is no need to do it twice.").

To make out an ineffective assistance claim under Strickland's standards, Petitioner must prove that his counsel's performance

_____

[4] The Reply does not purport to show Petitioner's actual innocence (see Docket Entry 94 at 7-11) and his other filings fall far short of that "extremely rare," United States v. Jones, 758 F.3d 579, 583 (4th Cir. 2014), showing (see Docket Entries 78, 79, 88, 89, 104, 107, 108, 109). Moreover, in a recent request for a "reduction under [18 U.S.C.] §3582(c)(1)(A)" (Docket Entry 125 at 7), Petitioner admitted "he committed the robberies and violations of [Section ]924(c) for which he is incarcerated" (id. at 3).

fell below the reasonable level expected of criminal defense attorneys and that prejudice resulted. See Strickland, 466 U.S. at 687–94. "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also Strickland, 466 U.S. at 694 (defining prejudice as "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

"Here[, Petitioner has] argue[d] that, as a mobile phone user, he ha[d] an objectively reasonable expectation of privacy in the records kept by his mobile service provider. . . . The seizure of this evidence [without a warrant] violated [his] 4th Amendment right." (Docket Entry 78, ¶ 12(Ground One)(a) (internal parenthetical omitted); see also id., ¶ 12(Ground Two)(a) ("[Petitioner's] telephone records . . . implicate[d] his 'exact' location during the time-period of the robberies, [so his] counsel [] had a legal obligation to make a timely request for the suppression or exclusion of this evidence, which was obtained without a proper search warrant."); id., ¶ 12(Ground Five)(a) ("[Petitioner's] counsel['s ] failure to file a pre-trial 'motion to suppress' the unlawfully seized 'cell-phone records' was compounded by his failure to argue on appeal[] that th[is C]ourt committed reversible error by allowing the introduction of 'cell-

phone records' which were unlawfully seized . . . .").) As their foundation, Grounds One, Two, and Five all rest entirely on the panel opinion issued on August 5, 2015, in <u>United States v. Graham</u>, 796 F.3d 332, 344 (4th Cir.) (ruling "that the government violated the Fourth Amendment in seeking and inspecting the [cell-site location information ('CSLI') for the defendants' mobile telephones] without a warrant based on probable cause"), <u>reh'g en banc granted</u>, 624 F. App'x 75 (4th Cir. 2015),[5] <u>panel opinion rejected on reh'g en banc</u>, 824 F.3d 421, 424 (4th Cir. 2016) (en banc) ("hold[ing] that the Government's acquisition of historical CSLI from [the d]efendants' cell phone provider [without a warrant] did not violate the Fourth Amendment"), <u>en banc opinion abrogated</u>, <u>Carpenter v. United States</u>, ___ U.S. ___, 138 S. Ct. 2206 (2018), <u>as recognized by</u> <u>United States v. Aigbekaen</u>, 943 F.3d 713, 719 n.3 (4th Cir. 2019). (<u>See</u> Docket Entry 78, ¶ 12(Ground One)(a) (citing <u>Graham</u> panel opinion); <u>id.</u>, ¶ 12(Ground Two)(a) (same); Docket Entry 79 at 1-2 (quoting <u>Graham</u> panel opinion to support Ground One), 4 (citing <u>Graham</u> panel opinion to support Ground Two), 8 (quoting <u>Graham</u> panel opinion to support Ground Five).)

_____

[5] By operation of Fourth Circuit rules, "[t]h[e panel] opinion[ in <u>Graham</u>] was vacated by th[e Fourth Circuit']s grant of rehearing en banc on October 28, 2015," <u>United States v. Hargett</u>, 797 F. App'x 765, 767 (4th Cir.) (citing 4th Cir. R. 35(c)), <u>cert. denied</u>, ___ U.S. ___, 141 S. Ct. 423 (2020); <u>see also</u> <u>United States v. Simmons</u>, No. 2:16CR130, 2017 WL 6388956, at *9 (E.D. Va. Dec. 14, 2017) (unpublished) ("After the [<u>Graham</u>] panel opinion was vacated, it was a legal nullity . . . .").

A cursory review of (A) the (August 5, 2015) date of the Graham panel opinion's issuance, i.e., (i) more than three years after the jury found Petitioner guilty on July 12, 2012 (see Docket Entry 40 at 2), (ii) more than a year after the Fourth Circuit affirmed his conviction on June 23, 2014, see Straite, 576 F. App'x at 211, and (iii) more than nine months after the Supreme Court declined to review his case on November 3, 2014, see Straite, 574 U.S. at 986, as well as (B) the Graham panel opinion's subsequent history, i.e., (i) its near-immediate vacation on October 28, 2015, see Graham, 624 F. App'x at 75, (ii) followed by the explicit rejection of its conclusions by the en banc Fourth Circuit on May 31, 2016, see Graham, 824 F.3d at 421, (iii) which en banc ruling remained controlling authority until June 22, 2018, see Carpenter, ___ U.S. at ___, 138 S. Ct. at 2206), reveals the fatal flaw(s) of Grounds One, Two, and Five. This Fourth Circuit decision – dispatching (in a direct appeal) the same core contention that underlies Grounds One, Two, and Five – underscores the point:

> [The defendant] contends that his cell phone records were unconstitutionally obtained without a warrant and that the resulting evidence should have been suppressed at trial as a result. . . .
>
> In *United States v. Graham*, we held that "the government does not violate the Fourth Amendment when it obtains historical cell site information from a service provider without a warrant." In *Carpenter v. United States*, however, the Supreme Court made clear that the government's acquisition of [the defendant's] cell site records "was a search within the meaning of the Fourth Amendment." While *Carpenter* is obviously controlling

11

> going forward, it can have no effect on [the defendant's]
> case. The exclusionary rule's sole purpose is to deter
> future Fourth Amendment violations. Thus, when
> investigators act with an objectively good-faith belief
> that their conduct is lawful, the exclusionary rule will
> not apply. Objectively reasonable good faith includes
> searches conducted in reasonable reliance on subsequently
> invalidated [authority]. [The defendant] does not . . .
> deny that investigators in this case reasonably relied on
> [then-existing authority] in obtaining the cell site
> records. Without question, then, the good-faith
> exception to the exclusionary rule applies to
> investigators' actions here.

United States v. Chavez, 894 F.3d 593, 608 (4th Cir. 2018) (internal brackets, citations, some quotation marks, and ellipsis omitted) (first quoting Graham, 824 F.3d at 425, then quoting Carpenter, ___ U.S. at ___, 138 S. Ct. at 2220).

Consistent with Chavez's reasoning, courts across the country, including the Fourth Circuit (albeit by unpublished opinion), uniformly have denied ineffectiveness claims of the sort presented in Grounds Two and Five (on which Petitioner must prevail to pursue Ground One). See, e.g., United States v. Jackson, 781 F. App'x 188, 190-91 (4th Cir. 2019) ("[The defendant] argues that he was denied his right to effective assistance of counsel because counsel did not file a motion to suppress [CSLI] obtained without a search warrant. . . . Because [the defendant's] counsel did not have an obligation to anticipate Carpenter's change in the law, [his] counsel's representation was not ineffective related to a potential motion to suppress."); Mero v. United States, Nos. 4:17CR13, 4:20CV38, 2021 WL 3021942, at *5 (E.D. Va. July 16, 2021)

(unpublished) ("[E]ven assuming that counsel provided deficient representation by failing to raise a CSLI challenge, [the p]etitioner fails to demonstrate that he suffered prejudice as a result . . . . At th[e time of his guilty plea], the controlling law in this Circuit provided that a warrant was not required to obtain historical CSLI." (citing <u>Graham</u>, 824 F.3d at 424-25)), <u>appeal dismissed</u>, No. 21-7173, 2022 WL 519931 (4th Cir. Feb. 22, 2022) (unpublished); <u>Stanley v. United States</u>, Nos. 5:15CR166-2, 5:18CV577, 2020 WL 1492807, at *3 (E.D.N.C. Mar. 26, 2020) (unpublished) ("When appellate counsel filed [the] petitioner's brief on appeal, Fourth Circuit law was clear – law enforcement was not required to secure a warrant before obtaining [CSLI] evidence . . . . As such, appellate counsel reasonably focused on other, stronger issues . . . . Accordingly, the court concludes [the] petitioner cannot show under the facts alleged that appellate counsel acted deficiently in this regard."); <u>United States v. Shaw</u>, No. 12-20044, 2020 WL 1233751, at *2-3 (D. Kan. Mar. 13, 2020) (unpublished) ("[The] defendant argues that trial counsel and appellate counsel were ineffective in failing to argue that the Government obtained certain cell tower evidence without a warrant in violation of the Fourth Amendment. . . . [C]ounsel's performance was not constitutionally deficient with respect to this issue. A warrant is now required under *Carpenter*, but at the time of [the] defendant's trial and appeal in 2012 and 2013, it was

13

reasonable for counsel to believe that the argument would not prevail . . . . Moreover, because the law did not clearly require a warrant in 2012, when the Government obtained the records used in this case, the evidence would have been allowed under the good-faith exception to the exclusionary rule . . . ." (emphasis omitted)); United States v. Davis, No. 1:13CR28, 2019 WL 1584634, at *4 (M.D. Pa. Apr. 12, 2019) (unpublished) ("[C]ounsel's performance was reasonable. . . . [T]he rule requiring a search warrant for [CSLI] was handed down well after [the d]efendant's trial and conviction. [His] counsel had no reason to think he had a legal basis to suppress the information because the Supreme Court had not yet carved out its new rule. Indeed, under the prevailing case law at the time, obtaining such information without a warrant was presumably valid . . . .").

In like fashion (and as dictated by the logic of Chavez), the Court should deny relief on Grounds One, Two, and Five.

GROUNDS THREE AND FOUR

Via Grounds Three and Four, the Section 2255 Motion alleges ineffective assistance in connection with an alibi defense. (See Docket Entry 78, ¶ 12(Ground Three) & (Ground Four).) Specifically, Ground Three asserts that "[c]ounsel['s ] failure to call [Petitioner's] 'alibi witness[,' his] mother, amounted to ineffective assistance" (id., ¶ 12(Ground Three)), and Ground Four asserts that, "[a]fter refusing to call [Petitioner's] mother to

14

testify, [Petitioner's] counsel [] should have reasonably called [Petitioner] to testify, as to his alibi" (id., ¶ 12(Ground Four)(a)). Ground Three's "[s]upporting facts" do not include details of the testimony Petitioner's mother would have given, stating only that she "would [have] testif[ied] that [he] was at home, with her, the entire day of the [attempted] robbery of July 6, 2009, and could not have possibly been involved in th[at] robbery attempt." (Id., ¶ 12(Ground Three)(a).) The "[s]upporting facts" for Ground Four likewise do not elaborate on Petitioner's testimony about his alibi for the attempted robbery charged in Counts Five and Six, but instead simply declare that "[b]oth [he] and his mother were ready to testify that they were at home the entire day of July 6, 2009." (Id., ¶ 12(Ground Four)(a).)[6]

With its Response, the United States, in turn, submitted a sworn statement from Petitioner's counsel that he "interviewed [Petitioner's] mother and determined she would not be a credible witness for trial." (Docket Entry 86-1 at 1; see also id. (adding

---

[6] Petitioner's Memorandum of Law in Support and his and his mother's affidavits make similarly unadorned proffers. (See Docket Entry 79 at 6 (averring, as to Ground Three, that Petitioner's mother "would have testified that [Petitioner] was home with her, the entire day, on July 6, 2009"), 7 (averring, as to Ground Four, that "both [Petitioner and his] mother . . . were ready and willing to testify that they remained home 'together' the entire day"), 10 ("On July 6, 2009, my son, [Petitioner], resided with me . . . and was with me the entire day, at home[.]" (fill-in-the-blank line omitted)), 13 ("On July 6, 2009, I was at home with my mother the entire day . . . ." (fill-in-the-blank line omitted)).)

15

that she "had several run-ins with Court security").) Petitioner's counsel further swore that he "discussed the possibility of [Petitioner] taking the witness stand with [Petitioner], and it was upon advice of counsel that he not take the witness stand and [Petitioner] agreed." (Id.) Moreover, the trial transcript confirms that, after discussion with his counsel, Petitioner "elect[ed] to not put on any evidence, including [that he] would not be testifying in this matter." (Docket Entry 64 at 65; see also id. ("THE COURT: You understand you have the right to testify, [Petitioner]? [Petitioner]: Yes, sir.").)[7] Those considerations doom Grounds Three and Four.

Starting with Ground Three, "the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [courts] must afford enormous deference." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (internal quotation marks and ellipsis omitted). Here, that balance tilted decidedly against calling Petitioner's mother as an alibi witness, due to her susceptibility to impeachment for bias, see, e.g., Davis v. Alaska, 415 U.S. 308, 316 (1974) ("The partiality of a witness . . . is always relevant as discrediting the witness and affecting

_____

[7] The above-quoted record excerpt refutes the Reply's bald assertion that "[t]he final decision not to call [Petitioner] . . . was [his] counsel['s ], and [his] counsel] alone made that decision" (Docket Entry 94 at 5-6 (internal brackets omitted)).

16

the weight of h[er] testimony." (internal quotation marks
omitted)); United States ex rel. Maxwell v. Gilmore, 37 F. Supp. 2d
1078, 1089 (N.D. Ill. 1999) (recognizing reasonableness of view
that the petitioner's "mother . . . would not be credible alibi
witness[], given [her] obvious personal interest in his
acquittal"), which threatened to leave Petitioner with "an
unsuccessful alibi defense [which] might well have had the
unintended consequence of reinforcing the credibility of the
government's chief witness[es]," DiMattina v. United States, 949 F.
Supp. 2d 387, 411 (E.D.N.Y. 2013); see also Stovall v. Tilton, No.
CV07-3105, 2011 WL 2939423, at *23 (C.D. Cal. June 10, 2011)
(unpublished) ("A witness who appears . . . biased and testifies to
X may persuade the jury that not-X is true . . . . [C]ounsel could
well decide not to call family members as witnesses because family
members can be easily impeached for bias. [The p]etitioner's
counsel reasonably could have weighed the strength of the potential
alibi defense supported only by [a family member's] testimony
against the possible detrimental effect it would have on [the
p]etitioner's case when attacked, and concluded that presenting
such readily-attacked evidence created too great a risk that jurors
would focus on the potential weakness of the defense theory, rather
than on any weaknesses in the prosecution's case." (internal
quotation marks and citations omitted), recommendation adopted,
2011 WL 2939420 (C.D. Cal. July 19, 2011) (unpublished).

17

As the United States cogently has explained:

> Clearly, [Petitioner's] counsel had a valid trial strategy in deciding not to call a witness whom he had interviewed and determined not to be credible. Few things could be more damaging at trial than calling an alibi witness[] that is not worthy of belief. The proposed alibi [witness] was obviously an interested party and the affidavit supplied by [Petitioner] in support of the importance of this evidence is completely devoid of detail. Here, [Petitioner's] counsel made a sound decision not to call a witness, who, in his determination, lacked credibility and this is not a ground under which this Court can make a finding of ineffective assistance of counsel.

(Docket Entry 86 at 19.)[8] The Court therefore should deny relief on Ground Three, just as many other courts confronted with analogous claims have done. See, e.g., McGonagle v. United States, 137 F. App'x 373, 378 (1st Cir. 2005) (rejecting "complain[t] about the failure of [the petitioner's] counsel to present alibi evidence" from family member, because counsel made strategic decision based on interview of family member); Denham v. Deeds, 954 F.2d 1501, 1505 (9th Cir. 1992) (overruling "argu[ment] that []

_____

[8] In addition, the Fourth Circuit's summary of the evidence at trial, see Straite, 576 F. App'x at 213-14 (citing, inter alia, "testimony of two of [Petitioner's] accomplices . . . directly implicat[ing him] in the July 6 attempted robbery," testimony from one accomplice "that on July 6[ Petitioner] admitted . . . he had robbed the [same] bank before," "testimony from the bank manager and assistant manager [which] established a strong link between the July 6 attempt and the April 23 armed robbery," and "[Petitioner's] cell phone records, showing that he traveled from Charlotte, the city from which the [vehicles used in the robbery and robbery attempt] were reported stolen, to the vicinity of the bank and back on April 23 and July 6"), belies Ground Three's unsupported contention that "[t]he governmant's [sic] case rested primarily on eyewitness testimony" (Docket Entry 78, ¶ 12(Ground Three)(a)).

18

counsel's failure to call [putative] . . . alibi witness denied [the defendant] effective assistance of counsel," because counsel's negative assessment of putative alibi witness's value and resultant decision not to call her "reflects the skill and judgment one would expect of a reasonably competent attorney"); United States v. Long, 674 F.2d 848, 855 (11th Cir. 1982) ("[The defendant] alleges that he was denied effective assistance of counsel because counsel failed to call alibi witnesses. This [c]ourt will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses. There was no Sixth Amendment violation." (internal citations omitted)); De Cicco v. Ercole, No. 9:07CV1030, 2011 WL 5325654, at *3 (N.D.N.Y. Nov. 3, 2011) (unpublished) ("Because [the petitioner's counsel] could have reasonably decided that to call . . . [the proposed] alibi witness would risk [the petitioner's] credibility in the eyes of the jury, his representation did not fall below an objective standard of reasonableness.").

Ground Four fares no better, as (again in the apt words of the Response by the United States) "[Petitioner's] own decision not to testify[] cannot form the basis of a finding o[f] ineffective assistance of counsel. [Petitioner] clearly understood his right to testify and elected not to do so." (Docket Entry 86 at 21 (citing Docket Entry 64 at 64-65).) Furthermore, the Fourth Circuit long ago made it clear that "[c]ounsel's advice not to testify is a paradigm of the type of tactical decision that cannot

19

be challenged as evidence of ineffective assistance." <u>Hutchins v.</u> <u>Garrison</u>, 724 F.2d 1425, 1436 (4th Cir. 1983); <u>see also</u> <u>United</u> <u>States v. Mehta</u>, Crim. No. 06-99, Civ. No. 11-2828, 2014 WL 546685, at *5 (D. Md. Feb. 7, 2014) (unpublished) ("[The petitioner] acknowledges through his pleadings that he discussed whether or not he should testify with his counsel. Although [the p]etitioner may now regret his ultimate decision not to testify, the advice provided by a criminal defense lawyer on whether his client should testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." (internal quotation marks omitted)); <u>Jones v. United States</u>, Crim. No. 01-250, Civ. No. 03-508, 2006 WL 1555937, at *5 (E.D. Va. June 1, 2006) (unpublished) ("[A]dvice that it is in the best interest of the defendant not to testify, even if relayed adamantly, is not improper and does not rise to the level of ineffective assistance of counsel.").[9] In sum, Ground Four also fails as a matter of law.

---

[9] Petitioner has suggested that his counsel should not have advised him against testifying because "[h]is entire criminal history had already been introduced to the jury, which included [his convictions for] two Food Lion robberies, allowed under [Federal Rule of Evidence] 404(b)." (Docket Entry 78, ¶ 12 (Ground Four)(a); <u>see also</u> <u>id.</u> ("[Petitioner's] credibility could not have been further damaged.").) That suggestion ignores the risks of testifying beyond impeachment with the fact of a prior conviction. <u>See</u> <u>United States v. Jackson</u>, Crim. No. 15-260(7), 2021 WL 4502348, at *5 (D. Minn. Oct. 1, 2021) (unpublished) ("[The petitioner] contends that it was ineffective assistance for counsel to advise him not to testify in his own defense, particularly after the [c]ourt allowed the Government to introduce evidence of [his] prior (continued...)

SUPPLEMENTAL SECTION 2255 MOTION

The Supplement Motion requests leave for Petitioner to file the Supplemental Section 2255 Motion to raise an additional habeas claim that the Johnson decision (declaring unconstitutional the residual clause of the definition of "violent felony" for purposes

---

[9](...continued) drug convictions. [The petitioner] contends that there was 'little to lose' from having him testify once the [c]ourt determined that the jury could hear about the prior convictions. . . . There are many reasons an attorney may recommend that his client not testify, not the least of which is the possibility that the client will incriminate himself under cross-examination. Further, the fact that the jury heard in general of [the petitioner's] prior convictions does not vitiate the harm that might have occurred had [he] been cross-examined about the specifics of those previous convictions. Counsel's advice falls squarely in the category of sound trial strategy. [The petitioner] has failed to establish either deficient performance or prejudice, and his claims that his attorney was ineffective are without merit." (internal citation omitted)), appeal dismissed, 25 F.4th 604 (8th Cir. 2022); Flores v. United States, Nos. 3:11CR353, 3:15CV484, 2016 WL 6775693, at *5 (W.D.N.C. Nov. 14, 2016) (unpublished) ("[The p]etitioner next contends that his attorney was constitutionally deficient for advising him not to testify . . . . [The p]etitioner has identified nothing in the record or elsewhere that suggests, let alone proves in the light of the strong presumption mandated by Strickland, that the advice he alleges his attorney gave was anything other than entirely reasonable. [The p]etitioner's testimony could well have bolstered the Government's case if the jury had found him not credible. . . . '[I]f a defendant takes the stand and denies the charges and the jury thinks he's a liar, this becomes evidence of guilt to add to the other evidence.' Moreover, if th[e c]ourt were to conclude that his testimony was willfully false, he could have faced a greater sentence." (internal citations, some internal quotation marks, and ellipsis omitted) (quoting United States v. Burgos, 94 F.3d 849, 868 (4th Cir. 1996) (en banc)); see also King v. United States, Nos. 6:04CR127, 6:07CV447, 2009 WL 3246803, at *18 (S.D.W. Va. Oct. 5, 2009) (unpublished) ("While many defendants wish to take the stand and declare that all the government's witnesses have failed to tell the truth, the tactic is rarely successful and usually unpersuasive.").

21

of Section 924(e)) effectively invalidated his convictions for brandishing firearms in violation of Section 924(c). (<u>See</u> Docket Entry 88 at 1-2 (referring to Docket Entry 89).) At the time Petitioner filed the Supplement Motion (i.e., before the United States responded to the Section 2255 Motion), he could amend this habeas action as a matter of course. <u>See</u> Fed. R. Civ. P. 15(a)(1)(B); <u>see also</u> 28 U.S.C. § 2242 (decreeing that habeas actions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). That circumstance renders the Supplement Motion moot and obligates the Court to address the Supplemental Section 2255 Motion's <u>Johnson</u> claim.

In fulfilling that obligation, the Court should note that, "[a]s a threshold matter, the government [has] move[d] to dismiss as untimely Petitioner's [Supplemental Section 2255 M]otion." (Docket Entry 96 at 1 (internal citation omitted).) To show untimeliness, the United States has articulated these points:

1) "[a] petitioner is generally required to file [a] § 2255 motion within one year of the date on which [the petitioner's] judgment of conviction becomes final" (<u>id.</u> (citing, inter alia, 28 U.S.C. § 2255(f)(1));

2) "[Petitioner's] Judgment became final on November 3, 2014, when the petition for writ of certiorari was denied" (<u>id.</u> at 2 (referring to <u>Straite</u>, 574 U.S. at 986));

22

3) the Clerk docketed the Supplemental Section 2255 Motion on July 1, 2016 (see id. (referring to Docket Entry 89 at 1); see also Docket Entry 89 at 15 (dated as executed and served by mail on the United States on June 16, 2016); Docket Entry 104 at 2 n.1 ("[Petitioner] hand-delivered the [S]upplemental [Section 2255 Motion] to the prison mail-room officials, at his place of confinement, on June 24, 2016, where the envelope was 'rubber-stamped' as received on that date." (internal citation omitted)));

4) the new claim in the Supplemental Section 2255 Motion "alleging Johnson error is different in both 'time and type' than the ineffective assistance error[s] that Petitioner previously alleged [in the Section 2255 Motion, such that the new Johnson claim does not relate back to the (timely) filing date of the Section 2255 Motion]" (Docket Entry 96 at 2 (quoting United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000))); and

5) "Petitioner [thus] raised his new Johnson claim[] outside the one-year period allowed under § 2255(f)(1), and [that claim] does not fall within the scope of 28 U.S.C. § 2255(f)(3), which provides the only arguably available exception to the otherwise applicable one-year statute of limitations" (id. at 3).[10]

---

[10] The above-referenced exception renders timely claims filed within a year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," 28 U.S.C. § 2255(f)(3).

23

Petitioner's Supplemental Reply rejoins that "[he] timely filed his [S]upplemental [Section 2255 Motion], on June 24, 2016, and within the one-year statute of limitation period, beginning at the June 26, 2015 announcement of a 'new rule' in <u>Johnson</u> . . . and under the 'MAIL BOX RULE' . . . ." (Docket Entry 104 at 3 (internal parenthetical citation, parallel citations, and parenthetical quotation omitted); <u>see also</u> <u>id.</u> ("Under the prison 'mailbox rule' this Court should give [Petitioner] the benefit of the June 24, 2016 date he hand-delivered his [S]upplemental [Section 2255 Motion] to prison mail-room officials, as the 'date of filing', rather than the July 1, 2016 date the Clerk actually [docketed] this document." (internal parenthetical citation omitted)).) More specifically, according to Petitioner, he "raised his new <u>Johnson</u> claim[] within the one-year period allowed under § 2255(f)(3), and his [S]upplemental [Section 2255 Motion] should be decided on the merits." (<u>Id.</u> (internal brackets omitted).)

"[T]o find Petitioner's [Supplemental Section 2255 M]otion timely, [the Court] must conclude that it relies on a right 'recognized' in *Johnson* <u>or another more recent [retroactive] Supreme Court case</u>." <u>United States v. Brown</u>, 868 F.3d 297, 301 (4th Cir. 2017) (emphasis added). Although "*Johnson* dealt only with the residual clause of [Section 924(e)]," <u>id.</u> at 302, during the pendency of this habeas action, the Supreme Court not only ruled <u>Johnson</u> retroactively applicable to cases on collateral

24

review, see Welch v. United States, 578 U.S. 120 (2016), but also extended Johnson's reasoning to "conclu[de] that § 924(c)(3)(B)[, i.e., the residual clause in the 'crime of violence' definition,] is unconstitutionally vague," United States v. Davis, ___ U.S. ___, ___, 139 S. Ct. 2319, 2336 (2019).[11] Moreover, "Welch, which held Johnson to be a new rule and retroactive, 'logically permits no other conclusion than that the rule in Davis is retroactive.'" United States v. Johnson, No. 3:09CR418, 2019 WL 4739670, at *3 n.5 (E.D. Va. Sept. 27, 2019) (unpublished) (internal brackets omitted) (quoting Tyler v. Cain, 533 U.S. 656, 669 (2001) (O'Connor, J., concurring)); see also In re Thomas, 988 F.3d 783, 789 (4th Cir. 2021) (holding, for purposes of certification of successive habeas action under 28 U.S.C. § 2255(h)(2), that "new rule in Davis applies retroactively to cases on collateral review").

In view of those developments, despite the fact that Petitioner's Supplemental Section 2255 Motion "is untimely [as initially brought] under Johnson, it may be considered [timely] under Davis," Stewart v. United States, No. 2:09CV295, 2020 WL 85234, at *2 (D.S.C. Jan. 7, 2020) (unpublished) (full case name and citation omitted); accord Salazar-Rodriguez v. United States,

---

[11] The Supreme Court also relied on Johnson to void the residual clause in the "crime of violence" definition in 18 U.S.C. § 16(b), see Sessions v. Dimaya, 584 U.S. ___, 138 S. Ct. 1204 (2018), but – because Davis more directly bears on the Supplemental Section 2255 Motion – the Court need not dwell on Dimaya.

25

Nos. 7:12CR37, 7:16CV231, 2022 WL 673708, at *1-2 (E.D.N.C. Mar. 7, 2022) (unpublished); Barnett v. United States, Nos. 3:97CR23, 3:12CV327, 2021 WL 949848, at *18-19 (W.D.N.C. Mar. 12, 2021) (unpublished); see also United States v. Wallace, 788 F. App'x 925, 926 (4th Cir. 2019) ("[The petitioner's] § 2255 motion sought to challenge the continued validity of his § 924(c) conviction in light of the Supreme Court's decision in *Johnson*. The district court determined that [said] motion was untimely because it was filed years after his conviction became final, and he was not eligible for the delayed commencement period provided by § 2255(f)(3), given that *Johnson* did not extend to the residual clause of § 924(c)(3)(B). . . . [T]he [district] court did not have the benefit of the Supreme Court's decision in *Davis* . . . . Accordingly, we vacate the district court's order and remand this case to the district court for further consideration of [the petitioner's § 2255] motion, including as to its timeliness under § 2255(f) . . . ." (full case name and citation omitted)). "However, even in light of Davis, the [C]ourt [should] den[y] Petitioner's Supplemental Section 2255 M]otion because his [Section] 924(c) conviction[s] and sentence[s] are nonetheless valid based on the force clause [of that statute's definition of crime of violence]." Stewart, 2020 WL 85234, at *3.

26

By way of background:

> As defined in § 924(c)(3), the phrase "crime of violence" means a felony offense that either: "(A) <u>has as an element the use, attempted use, or threatened use of physical force against the person or property of another</u>, or (B) by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.' [The Fourth Circuit] ha[s] referred to subparagraph (A) of § 924(c)(3) as the "<u>force clause</u>" and to subparagraph (B) as the "residual clause."

<u>United States v. McNeal</u>, 818 F.3d 141, 151-52 (4th Cir. 2016) (internal ellipsis omitted) (emphasis added).[12]  "The <u>Davis</u> Court found the residual clause, subsection B, to be void for vagueness; however, the force clause, subsection A, remains intact.  As such, § 924(c) convictions based on an underlying crime of violence that fits within the force clause's definition are still valid." <u>Stewart</u>, 2020 WL 85234, at *3.

Count Three identifies the "crime of violence," "during and in relation to" which Petitioner "did carry and use, by brandishing, firearms," as "armed bank robbery in violation of . . . Section 2113(d)."  (Docket Entry 1 at 2.)  The Fourth Circuit expressly has held that "armed bank robbery is [] a crime of violence under the force clause."  <u>McNeal</u>, 818 F.3d at 157; <u>accord, e.g.</u>, <u>Salaam v. United States</u>, Nos. 2:94CR79 & 80, 1:16CV807, 2020 WL 4228181, at

---

[12] Some courts call the "force clause" the "elements clause." <u>See, e.g.</u>, <u>United States v. Rinker</u>, 746 F. App'x 769, 772 (10th Cir. 2018); <u>United States v. Armour</u>, 840 F.3d 904, 907 (7th Cir. 2016).

27

*2 (M.D.N.C. May 14, 2020) (unpublished) (Webster, M.J.), recommendation adopted, 2020 WL 4227547 (M.D.N.C. July 23, 2020) (unpublished) (Biggs, J.); Stewart, 2020 WL 85234, at *3; Crawford v. United States, Nos. 1:14CR138, 1:16CV476, 2019 WL 4261847, at *5-8 (M.D.N.C. Sept. 9, 2019) (unpublished) (Osteen, J.), appeal dismissed, 804 F. App'x 202 (4th Cir. 2020); Sweat v. United States, Nos. 1:05CR280-3, 1:12CV608, 2019 WL 8329859, at *3 (M.D.N.C. July 5, 2019) (unpublished) (Peake, M.J.), recommendation adopted, 2019 WL 8329736 (M.D.N.C. July 29, 2019) (unpublished) (Schroeder, C.J.). "Therefore, Petitioner's conviction [on Count Three] under § 924(c)(1)(A)(ii) is not affected by Johnson or subsequent related cases [like Davis] and it remains valid." Sweat, 2019 WL 8329859, at *3; accord, e.g., Salaam, 2020 WL 4228181, at *2; Stewart, 2020 WL 85234, at *3; Crawford, 2019 WL 4261847, at *7.

Regarding the Section 924(c) offense charged in Count Six, the predicate "crime of violence . . . is[] attempted armed bank robbery, in violation of . . . Section 2113(d)" (Docket Entry 1 at 3-4). "[A]ttempted armed bank robbery qualifies as a crime of violence under the 'elements'[/'force'] clause of [Section 924(c)'s 'crime of violence'] definition, which is not unconstitutionally vague." United States v. Armour, 840 F.3d 904, 907 (7th Cir. 2016); accord Alexander v. United States, No. 19-3281, 2019 WL 11890659, at *2 (6th Cir. June 18, 2019) (unpublished); United

28

States v. Rinker, 746 F. App'x 769, 772 (10th Cir. 2018); Leyones v. United States, Nos. 10CR743, 16CV3267, 2018 WL 1033345, at *5 & n.6 (E.D.N.Y. Feb. 22, 2018) (unpublished); LaFlora v. United States, Nos. CR 00-1025, CV 16-4667, 2017 WL 11634513, at *4 (C.D. Cal. June 21, 2017) (unpublished).[13]

---

[13] The Fourth Circuit has not directly ruled on whether attempted armed bank robbery constitutes a crime of violence under Section 924(c)'s force clause; however, "[a]s is evident from the Fourth Circuit's reasoning in *McNeal*, the fact that [Count Six involved an] attempted bank robbery, rather than a completed bank robbery, does not change the analysis," Leyones, 2018 WL 1033345, at *5 n.6. In particular, in deeming the (completed) armed bank robbery at issue in that case "a crime of violence within the meaning of the force clause of [Section] 924(c)(3), [the Fourth Circuit stated that said offense] has as an element the use, attempted use, or threatened use of physical force – specifically, the taking or attempted taking of property by force and violence, or by intimidation." McNeal, 818 F.3d at 157 (emphasis added) (internal quotation marks omitted). That plain language unmistakably indicates that robbery attempt offenses under Section 2113(a) (and Section 2113(d)) – like completed robbery offenses under Section 2113(a) (and Section 2113(d)) – satisfy Section 924(c)'s force clause (because they include an element of force/ violence or intimidation). See id. McNeal's reasoning on that front does appear in some tension with dicta in a later Fourth Circuit opinion which "h[e]ld that attempted Hobbs Act robbery is not categorically a crime of violence," United States v. Taylor, 979 F.3d 203, 210 (4th Cir. 2020) (internal quotation marks omitted), cert. granted, ___ U.S. ___, 141 S. Ct. 2882 (2021). See id. at 208-09 (implying that attempted bank robbery and attempted Hobbs Act robbery should receive same treatment under force clause). Even if the Supreme Court ultimately leaves Taylor standing, and even if the Fourth Circuit thereafter resolves the apparent conflict between the above-quoted language from McNeal and the above-referenced dicta from Taylor in a manner that precludes reliance on unarmed bank robbery attempts as crime-of-violence predicates under Section 924(c)'s force clause, "[Section 2113](d)'s additional element that the defendant 'puts in jeopardy the life of any person by the use of a dangerous weapon,' categorically defines [attempted armed bank robbery] as a crime[]
(continued...)

Because (as with Count Three) Petitioner's conviction on Count Six rests on a crime of violence within the meaning of Section 924(c)'s force clause (obviating any need for resort to Section 924(c)'s residual clause), the Supplemental Section 2255 Motion affords him no basis for relief.

## AMENDMENT MOTION AND LOCAL RULE 7.3(k) MOTION

The Amendment Motion "seeks leave of this [C]ourt to amend [the Section 2255 Motion]." (Docket Entry 108 at 1.) In particular, the Amendment Motion proposes to add claims that Petitioner's "conviction under [Section] 2113(a) and (d), in separate counts for the same offense, violated the Double Jeopardy Clause" (id. at 3) and that "[his] counsel's failure to challenge this matter violated his Six[th] Amendment guarantee of effective assistance" (id.). "The [United States] is not required to answer [a] motion [for relief under Section 2255] unless a judge so orders." Rule 5(a), Rules Governing Section 2255 Proceedings ("Section 2255 Rules"). The Court never entered an order requiring the United States to respond to the Amendment Motion (although the CM/ECF system auto-inputted text into the Docket Entry for the

---

[13](...continued)
of violence," LaFlora, 2017 WL 11634513, at *6 (some internal quotation marks omitted) (quoting Section 2113(d)); see also McNeal, 818 F.3d at 152 (describing element of Section 2113(d) which differentiates it from Section 2113(a) as: "in committing or attempting to commit the offense, the defendant assaulted any person, or put in jeopardy the life of any person, by the use of a dangerous weapon" (emphasis added)).

30

Amendment Motion referencing the standard civil motion response time under Local Rule 7.3(f)).  (See Docket Entries dated Jan. 31, 2020 (date of docketing of Amendment Motion), to the present.)

Based on the (mistaken) belief that the United States missed a court-ordered deadline to oppose the Amendment Motion, Petitioner filed the Local Rule 7.3(k) Motion, which argues that the United States did not timely "respon[d] in opposition [to the Amendment Motion and therefore that], pursuant to Local Rule 7.3(k),[14] and in the interest of justice, . . . his [proposed] amended claim[s should] be considered and decided as uncontested" (Docket Entry 109 at 1-2).  Even if the United States had failed to comply with a response order (which it did not), "Petitioner's 'default judgment' theories [would] have no application in th[is habeas] context," Hoque v. United States, Nos. 1:15CR37-2, 1:16CV1079, 2016 WL 8737432, at *2 (M.D.N.C. Nov. 28, 2016) (unpublished), recommendation adopted, 2017 WL 1378171 (M.D.N.C. Apr. 14, 2017) (unpublished) (Osteen, C.J.).

Although Petitioner cannot secure a default-style windfall in connection with the Amendment Motion, the Section 2255 Motion "may

---

[14] Under the Local Rule invoked by Petitioner, "[i]f a respondent fails to file a response within the time required by [Local R]ule [7.3(f)], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  M.D.N.C. LR 7.3(k).  This Court's Local Rule 7.3 (like all local rules) cannot impose requirements that conflict with rules enacted pursuant to 28 U.S.C. § 2072, such as Rule 5(a) of the Section 2255 Rules.  See Fed. R. Civ. P. 83(a).

be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under said rules, "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1). Because (as documented in the Introduction) those deadlines long passed before Petitioner filed his Amendment Motion, he may amend his Section 2255 Motion "only with the . . . written consent [of the United States] or the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2). The Amendment Motion does not tender written consent from the United States to the addition of the proposed Double Jeopardy and related ineffective assistance claims. (See Docket Entry 108 at 1-7.) As a result, Petitioner must obtain judicial leave to amend his Section 2255 Motion, which the Court may deny, if the record reflects "bad faith, undue prejudice to the opposing party, or futility of amendment," United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). In this instance, the Court should deny the Amendment Motion as futile.

In that regard, the record does confirm that the jury found Petitioner guilty of Counts One and Four, which (respectively) charged him with bank robbery and attempted bank robbery, both in violation of 18 U.S.C. § 2113(a), for the same robbery and the same attempted robbery that resulted in his convictions for armed bank robbery and attempted armed bank robbery in violation of Section

32

2113(d) (as charged in Counts Two and Five, respectively) (see Docket Entries 1, 40); however, the Judgment imposes no sentence (concurrent or otherwise) as to Counts One and Four, because "Counts 1 and 2 merge, and Counts 4 and 5 merge" (Docket Entry 52 at 2). Accordingly, Petitioner did not suffer the fate about which the Amendment Motion complains, i.e., "the imposition of a sentence for violations of [Section] 2113(a) and (d), in separate counts for the same offense[ in] violat[ion of] the Fifth Amendment's Double Jeopardy Clause" (Docket Entry 108 at 4 (emphasis added); see also id. at 4-5 (discussing precedent precluding concurrent sentences under Section 2113(a) and (d) for same offense conduct)), and (coordinately) his counsel overlooked neither authority he "should have been aware of [nor an avenue for] an effective challenge" (id. at 5). Simply put, the Amendment Motion (like the Local Rule 7.3(k) Motion) possesses no merit.

## CONCLUSION

The claims in the Section 2255 Motion (as amended, of right, to add a Johnson/Davis challenge to Petitioner's Section 924(c) convictions) do not warrant collateral relief. The additional claims proposed in the Amendment Motion fail as futile and Petitioner cannot prevail on those futile claims by operation of Local Rule 7.3(k).

**IT IS THEREFORE RECOMMENDED** that the Court (A) deny the Section 2255 Motion (Docket Entry 78), the Supplemental Section

33

2255 Motion (Docket Entry 89), and the Local Rule 7.3(k) Motion (Docket Entry 109), (B) deny as moot the Supplement Motion (Docket Entry 88), and (C) deny as futile the Amendment Motion (Docket Entry 108), all without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 28, 2022